## Sunbeam Corporation v. Hess Brothers

644

*Butz, Hudders, Tallman & Rupp*, for plaintiff.

*Orrin E. Boyle, Boyd H. Walker* and *J. J. Shestack*, for defendant.

HENNINGER, P. J., March 11, 1957.—Sunbeam has brought this complaint in equity to enjoin Hess Bros. from selling Sunbeam products at less than listed fair

trade prices, namely, by accepting the trade-in of an electric shaver against the purchase price of products, for which trade-ins are not permitted under Sunbeam's published price lists.

A preliminary injunction was issued and continued and the case set for final hearing beginning February 26, 1957. When this hearing date was fixed, it was discovered that two essential witnesses, Blackburn and Ploner, officials of Sunbeam, could not be present at that time because of previous compelling commitments.

## I. Application for Protective Order

On January 4, 1957, Hess filed notice of depositions of these witnesses at Allentown; on January 14, 1957, under Pennsylvania Rule of Civil Procedure 4003 relating to depositions for use at trial and Pennsylvania Rule of Civil Procedure 4007, depositions for discovery. On January 14, 1957, Hess applied for production by Sunbeam on January 30, 1957 of: (a) Correspondence, reports and records relating to shoppings of plaintiff's products between June, 1954, and the present date; (b) books, invoices, correspondence and other records showing shipments of Sunbeam products by plaintiff in or to the Allentown-Bethlehem trading area since January, 1955, until the present date; (c) list of retailers selling plaintiff's products in the Bethlehem trading area; (d) list of retailers to whom direct sales are made; (e) schedules of prices to distributors; (f) correspondence and records concerning allegations of fair trade violations. (g) plaintiff's instructions to and correspondence with distributors and retailers concerning trade-ins.

Sunbeam has asked for a protective order under Pa. R. C. P. 4012 (a) averring: (1) Depositions sought in bad faith for irrelevant information; (2) unreasonable expense to the witnesses, residents of Illinois, to come to Allentown; (3) if permitted, the depositions

ought to be taken in Illinois; (4) if in Illinois, plaintiff should receive reasonable attorney fees (Pa. R. C. P. 4008) ; or (5) pay the witnesses traveling expenses to Allentown; (6) determine whether the depositions are to be taken under Pa. R. C. P. 4003 or 4007; (7) that depositions be limited to fair trade and trade-in policies.

Simultaneously with the filing of the notice for taking depositions, defendant's answer was filed to which plaintiff filed preliminary objections. This made it impossible to hold the final hearing beginning February 26th because the preliminary objections had not been disposed of. Since the original purpose of the depositions was to take the testimony of witnesses who could not personally attend court on February 26th and since presumably these witnesses will be able to attend a future hearing in person, the necessity of taking their depositions for trial no longer exists. If at a later date plaintiff states that it does not intend to produce these witnesses at trial, a renewed application can be made to take their testimony by deposition for use at trial.

We take it then that the application for depositions as it stands today is for purposes of discovery under Pa. R. C. P. 4007 and no longer under Pa. R. C. P. 4003. Under those circumstances, we believe that defendant cannot compel plaintiff to produce these witnesses within the jurisdiction of this court and defendant has produced no authority to indicate any obligation on the part of a litigant to produce his witnesses for discovery purposes at the behest of the adverse party. It is enough that the litigant informs his adversary of the identity and whereabouts of witnesses. The procuring of the witnesses under Pa. R. C. P. 4007 (b) for the discovery of facts is up to the party desiring the testimony: 5 Anderson Pa. Civ. Pract. 217, and cases therein cited.

On the other hand, we are not inclined to grant plaintiff any attorney fees to attend the taking of depositions in Chicago, because plaintiff's headquarters are in Chicago and its principal counsel resides there.

When we come to the petition for production of documents under Pa. R. C. P. 4009, we weigh the demands in the light of relevancy and of the restrictions of Pa. R. C. P. 4011.

Pa. R. C. P. 4011 in its present form, reads as follows:

"No discovery or inspection shall be permitted which

"(a) is sought in bad faith;

"(b) causes unreasonable annoyance, embarrassment, expense or oppression to the deponent or any person or party;

"(c) relates to matter which is privileged or would require the disclosure of any secret process, development or research;

"(d) would disclose the existence or location of reports, memoranda, statements, information or other things made or secured by any person or party in anticipation of litigation or in preparation for trial or would obtain any such thing from a party or his insurer, or the attorney or agent of either of them, other than information as to the identity or whereabouts of witnesses; or

"(e) would require the making of an unreasonable investigation by the deponent or any party or witness."

It is our opinion that defendant is clearly entitled to a list of plaintiff's known retail outlets in this trading area. It is further entitled to learn what notices of violations have been reported to plaintiff and what action has been taken by plaintiff pursuant to such notices of violation. This might involve the text of

warning letters to determine whether there has been a bona fide campaign of enforcement.

Shopping reports and any communications between officials of the company or with other than retailers would be memoranda or statements made or secured in anticipation of litigation and therefore not demandable under Pa. R. C. P. 4011(d). Defendant invokes the authority of Bradley v. Philadelphia Transportation Co., 87 D. & C. 548, 550, and Stebelski v. Philadelphia Transportation Co., 6 D. & C. 2d 627, 631, which hold that information received in the general conduct of one's business must be made available, although similar reports made in view of litigation are exempt. We would hold, however, that all reports on shoppings made after complaint by defendant are shoppings in preparation for litigation, because of the defense of failure to enforce. The fact that the shoppings might also give rise to litigation with the violating retailer does not make it any the less a shopping in relation to the present litigation. Furthermore, if the reports were made for any litigation, they would be immune, for otherwise one litigant could procure what was inviolate to another and vice versa and the rule of exclusion would be a nullity.

We see no reason, however, why defendant should not have access to any reports or letters that have already been exhibited to its counsel in previous hearings or that may eventually be produced, despite their present immunity under Pa. R. C. P. 4011 (d).

Item (b) concerning shipments of Sunbeam products to this area will be refused, because of unnecessary expense and irrelevancy, and items (d), (e) and (g) because of irrelevancy. These items also concern preliminary objections nos. 1 and 2 to defendant's new matter in its answer.

Defendant, in requests nos. b, d, e and g, is seeking to discover evidence that plaintiff itself is violating the

Sherman Antitrust Act of July 2, 1890, 26 Stat. 209, as amended, 15 U.S.C. §§1-7, the Clayton Antitrust Act of October 15, 1914, 38 Stat. 730, as amended, 15 U.S.C. §§13, 13a, 13b and 21a, and the McGuire Fair Trade Act of September 26, 1914, 38 Stat. 719, as amended, 15 U.S.C. §45.

As we understand defendant's contention, it is that plaintiff has violated above Federal acts because it has sold its products direct to chain stores at the same price at which it sold to distributors, thus, in defendant's opinion, violating the provisions against "horizontal" agreements against competition and treating differently persons in competition with each other. This is, of course, not strictly a horizontal agreement for the party of the one part is never in the same class as the parties of the other part, although the parties of the other part are not in the same class with each other, some being distributors and others retailers. It is treating persons in the same class differently and the question might arise whether there is a valid distinction, recognizable under these acts, to justify a difference in prices or whether it is unjust discrimination.

This case differs from U. S. v. McKesson & Robbins, Inc., 351 U. S. 305, in which a resale price agreement with wholesalers was striken down because the manufacturer was also a wholesaler and, therefore, the contract was condemned as one between persons in the same class.

We do not intend, however, to go into the question of whether or not plaintiff has violated any Federal laws, because we believe that any such violations, even if they exist, bear no relation to the agreement in suit and therefore cannot be here interposed as a defense. We find support in this in obiter dictum in the McKesson & Robbins case, supra, where it is stated, page 309:

"The Government does not question the so-called vertical 'fair trade' agreements between McKesson and retailers of McKesson brand products. It challenges only appellee's price-fixing agreements with independent wholesalers with whom it is in competition."

If there is unlawful discrimination as to wholesale costs between chain stores and other retailers, that is for the Federal courts to supervise. So long as the chain stores adhere to the fair trade retail prices established by plaintiff, and we have not been informed of any such violation, defendant may be prejudiced in its profits but not in its competition. Since defendant by cutting prices wants still less profits than it would be allowed at fair trade prices, it can hardly complain in this action that the chain stores enjoy a higher margin of profit than it is permitted.

If this were a situation in which trade-ins were permitted, we might have to look into the vexing problem of trade-ins. We can recognize the reason for accepting trade-ins on the purchase of a similar article in order to stimulate earlier discarding of a used device. We are disturbed by the placing of an arbitrary value on a useless article to the prejudice of a cash buyer. We have seen the abuses that have arisen from this practice. It is time enough, however, to pass upon this question when it arises.

In our case the agreement voluntarily entered into by defendant with the current price list allowed for no trade-ins upon the articles listed and therefore the trade-in policy on other articles is irrelevant unless there is evidence of lack of enforcement against other known violators of trade-in restrictions.

We use the expression "known violators" deliberately. Defendant stresses the point that distributors did not probe retailers and that plaintiff did not probe wholesalers to determine whether trade-ins were re-

ceived strictly in accord with price list regulations. While the duty is laid on those who wish to maintain fair trade prices to police violations, we are not convinced that business must be conducted upon a basis of suspicion rather than on that of "credit," in the broader use of the latter term. Until, therefore, suspicions were aroused, each had the right to assume that the other was dealing fairly.

This leaves the problem of whether plaintiff must demonstrate that it has lost business in this community by reason of defendant's violation of the fair trade agreement.

We consider this irrelevant for several reasons. In the first place, loss of business is a relative matter. Although plaintiff's business may have been the same or greater than before, it might have been still greater but for cheapening of its brands by discount sales. Furthermore, it is more than likely that a price war would cause a flurry of increased sales in the war area.

The real reason, however, why a showing of immediate loss to the manufacturer is unnecessary is because the public policy of the State in enacting the law protecting trade name brands supplies the proof of loss. The title on the basic Fair Trade Act of June 5, 1935, P. L. 266, 73 PS §7, reads:

"An act to protect trade-mark owners, distributors, and the public against injuries and uneconomic practices in the distribution of articles of standard quality under a distinguished trade-mark, brand or name."

The effect of cheapening a brand name may take years to be felt, just as it may take years to establish its standing. The immediate effect of a price war, therefore, is of no moment. To make proof of immediate loss an issue of fact in each case would be to substitute our own economic theories for the declared public policy established by the General Assembly.

Recognizing the superior knowledge of the parties as to the problems involved, we shall first give them an opportunity to draft an order in accordance with this opinion, without prejudice to the right of either to except to the rulings of the court.

## II Preliminary Objections

Preliminary objections nos. 1, 2, 3(c) and (f) have been considered in what has been stated concerning a protective order. It is true that one does not ordinarily prejudge sections of a pleading any part of which asserts a valid claim or defense and we do so now only because we have had to decide the issue on the protective order and in order to save the parties the necessity of producing evidence which would be rejected at trial.

Defendant has suggested that we should allow all proof so that any error can be corrected upon appeal. Unfortunately, the trial courts must make decisions whenever called upon to do so and stand by them and then take the consequences of their correctness upon appeal.

Preliminary objection 3(a) must be sustained. In paragraph 1 of defendant's new matter it is interposing the defense added to the Fair Trade Act of 1935 by the Act of May 25, 1956, P. L. 1756, 73 PS §8, which reads,

"It shall, however, be a complete defense to such an action for the defendant to prove that the party stipulating such price, after at least seven days' written notice given by the defendant prior to the commencement of such action, has failed to take reasonable and diligent steps to prevent the continuation of such advertising, offering for sale or selling, by those in competition with the defendant, who were specified in such notice."

Assuming that mere averment of nonregulation could be proved under a general statement to that effect, we are of the opinion that the language quoted

calls for specification of persons and .dates if that absolute defense is being relied upon.

In line with the above assumption, we believe that the general defense of lack of enforcement can be pleaded without specification of details and that defendant's paragraphs 2 and 5 of new matter will suffice. We arrive at this conclusion the more readily, since the preliminary hearing has apprised the parties of the charges of nonenforcement.

Nor are we concerned about preliminary objection 3(c) raising the defense that plaintiff's trade-in policies are a subterfuge. We have thoroughly explored these policies at the preliminary hearing and what remains is mostly a matter of interpretation rather than one of proof. We are assuming that defendant is referring to the application of trade-ins to other products than shavers. We are not now concerned with plaintiff's trade-in policy as related to shavers, for shavers are not a part of this litigation. Nor are we impressed by the contention that since distributors paid $5 apiece for used shavers, they had that value and that defendant bought a valuable article from purchasers of other products and that the purchaser then paid full price. All of the advertising and display cards negate that theory.

Now, March 11, 1957, a protective order will be issued in accordance with this opinion; both parties may submit a draft of such order within 15 days after date without prejudice to their right to except to such order.

It is further ordered that preliminary objections nos. 1, 2 and 3(a), (c) and (f) are sustained and paragraphs 4 and 12 of new matter in defendant's answer are stricken and it is ordered that defendant amend paragraph 1 of its new matter, specifying the names and dates of alleged violators of the Fair Trade Acts as provided to plaintiff after the effective date of the Act of May 25, 1956, P. L. 1756. The other preliminary objections are dismissed.